*In re* MARRIAGE OF DOROTHY MAE SHAFER, Petitioner-Appellant, and RAY E. SHAFER, Respondent-Appellee.

Second District   No. 83—276

Opinion filed March 29, 1984.

UNVERZAGT, J., dissenting.

Ronald F. Coplan, of Morrison, for appellant.

William R. Shirk, of Weinstine and Shirk, of Morrison, for appellee.

JUSTICE LINDBERG delivered the opinion of the court:
Petitioner, Dorothy Mae Shafer, appeals from that portion of a judgment of dissolution of marriage entered March 7, 1983, by the circuit court of Carroll County which provides for the distribution of the marital property of the petitioner and respondent, Ray E. Shafer.

On appeal, petitioner raises the following issues: (1) whether the trial court's distribution of marital property was inequitable; (2) whether the trial court's valuation of the parties' closely held business was against the manifest weight of the evidence; and (3) whether the trial court erred in not awarding maintenance to the petitioner.

The petitioner filed her petition for dissolution of marriage, and the respondent counterpetitioned for dissolution. A judgment of dissolution was entered on October 15, 1982. Petitioner and respondent were married on February 5, 1969. At the time of the entry of dissolution, the parties were both 40 years old and had three children, ages 16, 12, and eight. Petitioner, at the time of her marriage to respondent, had worked as a munitions handler for an army depot until she was laid off sometime in 1973. For the duration of the marriage, she was primarily responsible for household chores and the care of the couple's children. Respondent, since 1966, had been employed as a police officer with the Savanna police department and, beginning in 1971, he also had worked for a garbage disposal company. After working at the company two years, he was made a partner. However, the partnership was put in petitioner's name in order to avoid any possible conflict of interest situation due to his continued employment with the Savanna police department. In 1979, respondent purchased the business for $35,000. He submitted a bid and was awarded the garbage disposal contract with the city of Savanna, dated February 24, 1981, and due to expire on April 30, 1986. The contract was put in petitioner's name and signed by her.

The record discloses that in the day-to-day operation of the business, respondent drove one of the garbage trucks, repaired and maintained the trucks and hired and fired the personnel. Petitioner did the company's bookkeeping and accounting.

Respondent's net income per month in 1981 from his jobs as a police officer and with the garbage company was $2,035.58. He earned $17,014.44 gross per year from his job as a police officer and drew $500 gross per week from the company. A 1981 Federal joint income tax return showed an adjusted gross income of approximately $39,000.

The focus of the evidence presented at trial centered on the valuation of the garbage disposal business, known as Savanna Disposal Company. Evidence depositions from the parties' experts presented to the court valued the company at $32,784, $38,000, and $120,000.

In a letter of opinion, the trial court awarded petitioner custody of the three children and found the following property of the parties to be marital and awarded to the petitioner: (1) the marital residence

valued at $46,200, subject to an outstanding mortgage of $8,300, $5,300 of which is to be paid by respondent; (2) a 1982 Chevrolet Blazer valued at $10,000, subject to a lien of $8,500; (3) household goods and furnishings valued at $3,000; and (4) a 1968 school bus valued at $1,000. The trial court determined petitioner's marital property was valued at $48,700. The trial court awarded respondent a gun collection, valued at $1,000 and the garbage disposal company valued by the trial court at $55,000. The court ordered respondent to pay the 1982 and 1983 real estate taxes ($1,600) as well as $65 per week per child in child support. Respondent's award of marital property was valued at $49,100. In order to equalize the division in marital property, the trial court ordered respondent to pay $400 toward petitioner's attorney fees. The trial court did not award petitioner maintenance stating that petitioner had not requested maintenance. In awarding the business to respondent, the trial judge explained that his findings were based on his conclusion that the value of the business was dependent on respondent's personal services and his contributions to the business. The provisions of the memorandum opinion were incorporated into a written order, and petitioner filed a timely notice of appeal.

### DISTRIBUTION OF MARITAL PROPERTY

Petitioner maintains in this appeal that the marital property was not distributed in just proportions under section 503 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 503(c)). Petitioner argues that her award of marital property is insufficient for her financial needs because the marital residence she received is an asset she cannot maintain due to her low earning potential and is non-income producing. The court's award of child support, payment of a portion of the mortgage and payment of real estate taxes for 1982 and 1983 is insufficient to rectify the inequality of the property award according to petitioner.

■ The distribution of marital property rests within the sound discretion of the trial court and a reviewing court will not reverse absent an abuse of discretion. (*In re Marriage of Sevon* (1983), 117 Ill. App. 3d 313, 453 N.E.2d 866; *In re Marriage of Rothbardt* (1981), 99 Ill. App. 3d 561, 425 N.E.2d 1146; *In re Marriage of McMahon* (1980), 82 Ill. App. 3d 1126, 403 N.E.2d 730.) An abuse of discretion occurs only where no reasonable man would take the view adopted by the trial court. *In re Marriage of Bentivenga* (1982), 109 Ill. App. 3d 967, 971, 441 N.E.2d 336, 339; *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127, 398 N.E.2d 126, 129.

■ Under section 503(c) of the Illinois Marriage and Dissolution of Marriage Act a court is directed to divide marital property upon dissolution of the marriage in "just proportions considering all relevant factors." (Ill. Rev. Stat. 1981, ch. 40, par. 503(c).) In dividing marital property, the trial court need not make specific findings as to the factors set out in section 503 of the Act where the evidence supports the property division and the record allows a court of review a basis to review the propriety of the division. (*In re Marriage of Walsh* (1982), 109 Ill. App. 3d 171, 176, 440 N.E.2d 310, 313.) Furthermore, the Act does not prescribe an equal division of the marital property. (*In re Marriage of Aschwanden* (1980), 82 Ill. 2d 31, 37; *In re Marriage of Sevon* (1983), 117 Ill. App. 3d 313, 318, 453 N.E.2d 866, 869.) Thus, if the court has considered all the factors enumerated in section 503 of the Act, its discretion will only be reversed where no reasonable person would take the view adopted by the trial court.

■ After reviewing the record and the factors found in section 503(c) to be considered in the division of marital property, the apportionment of marital property made by the trial court in this case did not constitute an abuse of discretion. While the trial court did not state the relevant factors it considered in making the division, the record does reflect the value of the parties' resources, the age of the parties, the duration of the marriage, petitioner's homemaking contributions, the disparity of the parties' earning potential subsequent to the dissolution, the custodial award of the children to petitioner, and respondent's more substantial role in the operation of the business. The trial court calculated what he thought would represent an equitable distribution. Each party received 50% of the net assets and was awarded one of the two principal marital assets.

The trial court, after carefully and extensively reviewing the values submitted, awarded the respondent the business because of his greater contribution toward its acquisition and maintenance. While petitioner contributed her labors and earnings from her employment, the court could properly conclude that respondent's contributions were greater and that this justified awarding him the business rather than petitioner; therefore, it cannot be said that no reasonable person would take the view adopted by the trial court.

### VALUATION OF THE GARBAGE DISPOSAL COMPANY

In addition to her contention that the trial court failed to properly consider the statutory factors in dividing the marital property, petitioner contends that the trial court's valuation of the garbage dis-

posal company was against the manifest weight of the evidence. Petitioner submitted the evidence deposition of an expert who opined that the company had a fair market value of between $100,000 and $120,000. Respondent's experts valued the business at between $32,000 and $38,000. The trial court valued the company at $55,000. Petitioner contends that the trial court's valuation of the business at $55,000 is arbitrary and unsupported by the evidence presented.

■ In order to apportion marital assets under section 503 of the Illinois Marriage and Dissolution of Marriage Act, the proper value of such assets must be established. (*In re Marriage of Wilson* (1982), 110 Ill. App. 3d 809, 813, 443 N.E.2d 31, 34.) The trial court need not make specific findings of fact as to the value of the marital assets, so long as the evidence of value in the record is sufficient to enable a court of review to analyze the propriety of the trial court's disposition. *In re Marriage of Voight* (1982), 111 Ill. App. 3d 623, 628, 444 N.E.2d 694, 697.

■ Here, there was competent evidence as to the fair market value of the business from which the court could make an informed division and which was sufficient to support the trial court's valuation. Compare *In re Marriage of Wilson* (1982), 110 Ill. App. 3d 809, 443 N.E.2d 31.

## MAINTENANCE

Petitioner next argues that the trial court erred in not awarding her maintenance. Petitioner argues that she is without sufficient income in order to maintain herself in the standard of living established during the marriage.

Section 504 of the Act provides for the award of maintenance if the spouse lacks sufficient property to provide for reasonable needs, is unable to support herself through appropriate employment, or is otherwise without sufficient income. (Ill. Rev. Stat. 1981, ch. 40, pars. 504(a)(1), (2), (3).) The necessity for maintenance is within the trial court's discretion which will not be reversed unless contrary to the manifest weight of the evidence. *In re Marriage of Bentivenga* (1982), 109 Ill. App. 3d 967, 972, 441 N.E.2d 336, 340; *In re Marriage of Smith* (1979), 77 Ill. App. 3d 858, 862, 396 N.E.2d 859, 862.

It appears from the record that petitioner's financial resources are limited. The marital residence awarded to her is valued at $46,200 subject to a lien of $8,300. She was awarded household furnishings valued at $3,000 as well as a car valued at $10,000 subject to a lien of $8,500 and a bus valued at $1,000.

Conversely, respondent was awarded the disposal business which

generates an annual gross income of $26,000 and has a fair market value at $55,000. Respondent's net income is $2,035.58 per month from his employment as a police officer and with the disposal company. The trial court ordered respondent to pay $195 per week or $838.50 per month in child support, the first $5,300 remaining to be paid on the mortgage ($140 per month) and the 1982 and 1983 real estate taxes due in 1983 ($800) and 1984 ($800).

■ Under section 504(b) the spouse's "ability to meet his needs independently" is one of the factors to be considered in awarding maintenance. (Ill. Rev. Stat. 1981, ch. 40, par. 504(b)(1).) Further, section 504(b)(6) of the Act lists one of the factors to be considered is "the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." (Ill. Rev. Stat. 1981, ch. 40, par. 504(b)(6).) A party's reasonable needs are determined in light of his overall circumstances including the standard of living during the marriage. (Ill. Ann. Stat., ch. 40, par. 504, Supp. to Historical & Practice Notes, at 83 (Smith-Hurd 1983 Supp.); *In re Marriage of Simmons* (1980), 87 Ill. App. 3d 651, 409 N.E.2d 321.) The act provides that self-sufficiency should be established through a just division of assets wherever possible, rather than through maintenance. (*In re Marriage of Smith* (1981), 100 Ill. App. 3d 1126, 427 N.E.2d 1262.) The denial of maintenance will not be reversed absent an abuse of discretion. *Smith.*

■ One of the central considerations in construing section 504(a)(1) is whether the property has sufficient income-producing potential to provide for the spouse's reasonable needs. (Ill. Ann. Stat., ch. 40, par. 504, Supp. to Historical & Practice Notes, at 82 (Smith-Hurd 1983 Supp.).) A spouse need not sell assets nor impair capital to provide for his support. (*In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 412 N.E.2d 1336; *In re Marriage of Lloyd* (1980), 81 Ill. App. 3d 311, 401 N.E.2d 328.) These generalized statements, however, must not be taken too literally. In a property distribution where the parties have very few assets and one spouse is forced because of the paucity of assets awarded him to deplete his capital to pay his current living expenses, an award of maintenance is appropriate.

We note that petitioner sought maintenance in her complaint for dissolution. The trial court awarded temporary support for petitioner and the minor children October 15, 1982, pending resolution of the property issues. Thereafter, the cause was taken under consideration on the affidavits of income, expenses, assets and liabilities of the parties, expert valuation testimony, income tax returns and memoranda of argument of counsel.

Respondent's memorandum filed February 9, 1983, suggested "rehabilitative maintenance payments [to petitioner] for a period of two years in the amount of $30.00 per week." He also stated that he "has really been providing rehabilitative maintenance to Mrs. Shafer the last seven months, or since they separated in July, 1982."

Petitioner's memorandum of February 14, 1983, stated she "is unemployed except for the disposal company. She has no other means of support or income and no reasonable opportunity for the future acquisition of capital assets or income."

In a section of her memorandum labeled "Proposal" she proposed that she be awarded two-thirds of the marital property including the disposal business; that respondent's interest be paid to him over a period of five years (*i.e.*, a buy-out of his one-third interest); she occupy the marital residence until the youngest child's emancipation or petitioner's remarriage whichever occurs first; furnishings remain with the home; the children's custody be in petitioner; child support be based upon the net disposable income of respondent but not less than $250 per week; a formula for increasing child-support payments; she receive a vehicle; each party pay his attorney fees and costs; the cost of evidence depositions be divided equally and that "maintenance is not requested."

The petitioner contends on appeal that the trial court misconstrued the statement in her proposal that "maintenance is not requested" as a waiver of her request for maintenance. We agree with petitioner.

It is apparent that petitioner's statement that "maintenance is not requested" was in the context of her "proposal," which suggested she be awarded two-thirds of the parties' marital property which included, significantly, the disposal business. It is understandable that petitioner would not need maintenance under the court's adoption of her proposal. Since the disposal business was awarded to the respondent, it is obvious the trial court did not accept her proposal.

Our interpretation is buttressed by the respondent's proposal that petitioner receive $30 per week for rehabilitative maintenance. Further, respondent on appeal does not contend that petitioner waived consideration by the trial court of an award of maintenance to petitioner.

Thus, the factors listed in section 504(b) to be considered in awarding maintenance cannot be said to have been considered in the instant case where the trial court found no maintenance had been requested. We remand this issue to the trial court for a determination

of the amount of maintenance, if any, that would be appropriate considering the circumstances of the respective parties.

■■ In so doing we recognize that at the present time respondent's resources from which he can pay a significant amount of maintenance are very limited. Nonetheless, we do not believe that such a limitation should necessarily permanently bar petitioner from maintenance. Regardless of whether the court grants or denies maintenance it may consider taking a reserved-jurisdiction approach to maintenance. This would encourage the former spouse to seek employment while providing the court the opportunity to review the award at the end of a fixed period to determine what efforts the spouse has made toward achieving self-sufficiency and whether those efforts have been successful. (See *In re Marriage of Asch* (1981), 100 Ill. App. 3d 293, 426 N.E.2d 1066; see also *In re Marriage of Rothbardt* (1981), 99 Ill. App. 3d 561, 425 N.E.2d 1146.) Since petitioner has custody of the parties' minor children it is unlikely on this record that she will be able to achieve full self-sufficiency during their minority.

Further, reserving jurisdiction has the advantage under the record in this case, of permitting the trial court another opportunity to assess respondent's ability to pay maintenance. For these reasons the judgment of the circuit court of Carroll County is affirmed in all respects except as to the issue of maintenance. The cause is remanded for consideration of petitioner's request for maintenance.

Affirmed in part and remanded.

REINHARD, J., concurs.

JUSTICE UNVERZAGT, dissenting:

The majority decision, after much circumnavigation of the facts, fails to accurately state the position of the parties in the trial court on the question of maintenance.

The majority labors mightily but unconvincingly to create what does not exist in this record. The plaintiff-appellant's position in the trial court was that maintenance was not requested.

Plaintiff's trial counsel, who is also her appellate counsel, closed his written argument to the trial court with this paragraph:

"Maintenance is not requested. Each party should pay his or her attorney's fees, costs, C.P.A. costs and divide evenly the cost of the evidence depositions."

The trial judge's memorandum opinion stated that: "No mainte-

nance has been requested by the Petitioner, so none is awarded." He was correct.

No proofs were adduced on the subject. It cannot be awarded.

It is well settled that the theory upon which a case is tried in the lower court may not be changed on appeal, and that an issue not presented to or considered by the trial court cannot be raised for the first time on review. (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147.) It is required that the points argued on appeal be commensurate with the issues presented at trial. (*In re Estate of Leichtenberg* (1956), 7 Ill. 2d 545, 548-49.) Where a proposition is not urged or argued in the trial court, it will not be considered on review, for a party cannot argue one thing in the trial court and another to the appellate court. (*Westlake v. Moffitt* (1975), 30 Ill. App. 3d 597.) Dissolution proceedings are not *sui generis*, and these rules even apply to such proceedings. (*Bergan v. Bergan* (1976), 42 Ill. App. 3d 740.) Our court has long given validity to these necessary rulings. *Cornell v. County of Du Page* (1977), 58 Ill. App. 3d 230; *First National Bank & Trust Co. v. City of Rockford* (1977), 47 Ill. App. 3d 131.

As Justice Reinhard recently pointed out, "[a party] may not ask the court to proceed in a given manner and then assign as error in a court of review the ruling or action which he procured." *People v. Miller* (1983), 120 Ill. App. 3d 495, 501.

Furthermore, it is firmly established that this court has jurisdiction only over those matters which are raised in the notice of appeal. (*Harvey v. Carponelli* (1983), 117 Ill. App. 3d 448.) Maintenance was not specifically raised in the notice of appeal, and we should not consider the issue.

In the case at hand, no reversal and remand for a determination of maintenance is warranted.

I therefore dissent.